IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**RIO ALGOM MINING LLC, a wholly
owned subsidiary of Billiton
Investment 15 B.V., a Netherlands
company,**

        Plaintiff,

        vs.                                                  No. 06-CV-52 MCA/WDS

**TRONOX WORLDWIDE LLC, a
wholly owned subsidiary of Tronox,
Inc., a Delaware corporation,**

        Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on *Defendant's Opposed Motion to Transfer Venue and Brief in Support* [Doc. 8], filed April 7, 2006. Having considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court denies the motion.

**I. BACKGROUND**

The following facts are taken from Plaintiff's *First Amended Complaint* [Doc. 44] or are otherwise undisputed by the parties.

Plaintiff Rio Algom Mining and Defendant Tronox Worldwide are both limited liability companies. On December 19, 1988, Rio Algom entered into a purchase and sale agreement ("PSA") with Tronox's predecessor-in-interest. The PSA provided for Rio

Algom's purchase of all issued and outstanding stock of the Quivira Mining Company, which owned uranium mining properties in the area of Ambrosia Lake in New Mexico.  The PSA described anticipated reclamation activities at the site and set forth the parties' financial obligations with respect to the cost of those activities as follows: Rio Algom would be responsible for 100% of all reclamation costs up to $20 million; Rio Algom and Tronox would split equally the next $10 million in reclamation costs; and Tronox would be responsible for 100% of all reclamation costs over $30 million.  The PSA defined Agreed Ambrosia Lake Reclamation ("AALR") costs as, in pertinent part, "the sum of (i) all direct costs of AAL Reclamation, including reasonably allocated costs of service departments . . . plus (ii) an overhead allowance of 50% or direct labor costs . . . ."  [Doc. 8; Exh. 3, Dec. 19, 1998 PSA at 2].  The PSA further provided that "[d]irect labor costs shall include the actual cost of labor including wages or salaries and benefits of Quivira . . . employees directly associated with the AAL Reclamation . . . ."  [Id.].

On June 21, 2006, Rio Algom filed in the United States District Court for the District of New Mexico its *First Amended Complaint* against Tronox, alleging anticipatory breach of contract and breach of contract in connection with Tronox's alleged failure to pay its share of AALR costs and other costs relating to environmental cleanup issues and/or employee benefits, including but not limited to retirement plan costs and other post-retirement costs. [Doc. 44 at 9-10.]  Rio Algom seeks, among other things, a declaration that (1) the PSA requires Tronox to pay, as direct labor costs, retirement plan costs and severance benefits to employees who have performed or are currently performing AALR activities; (2) the PSA

requires Tronox to pay certain costs expended to clean up and monitor contamination related to untreated water discharges at Ambrosia Lake; (3) Tronox is required to pay 100% of all remediation costs related to off-site environmental contamination; and (4) Tronox must indemnify and hold Rio Algom harmless for certain losses, reclamation costs, and third-party claims. [Id. at 13-14]. Pursuant to 28 U.S.C. § 1404(a), Tronox now moves to transfer venue to the United States District Court for the Western District of Oklahoma.

## II. ANALYSIS

Section 1404(a) of Title 28 of the United States Code provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404. The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient. Chrysler Credit Corp. v. Country Chrysler, Inc., 928 F.2d 1509, 1515 (10th Cir. 1991). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (*quoting* Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)).

The following factors are among those that should be considered by a district court entertaining a § 1404(a) motion:

> (1) the plaintiff's choice of forum;
> (2) the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure

>attendance of witnesses;
>(3) the cost of making the necessary proof;
>(4) questions as to the enforceability of a judgment if one is obtained;
>(5) relative advantages and obstacles to a fair trial;
>(6) difficulties that may arise from congested dockets;
>(7) the possibility of the existence of questions arising in the area of conflict of laws;
>(8) the advantage of having a local court determine questions of local law; and
>(9) all other considerations of a practical nature that make a trial easy, expeditious, and economical.

Chrysler Credit Corp., 928 F.2d at 1516.  Unless the balance of factors is *strongly* in favor of the movant, Plaintiff's choice of forum should rarely be disturbed.  Scheidt v. Klein, 956 F.2d 963, 965 (10th Cir. 1992).

Having considered the Chrysler Credit Corp. factors, the Court concludes that approximately half of those factors (namely, factors (4), (5), (7), and (8)) are neutral ones that do not weigh particularly heavily for or against either Rio Algom or Tronox.  The Court further concludes that, while Tronox has shown that the Western District of Oklahoma would likely be a convenient forum for the litigation of this matter, Tronox nevertheless has not demonstrated that the remaining applicable Chrysler Credit Corp. factors weigh so heavily in favor of transfer that Rio Algom's choice of forum should be disturbed.  See Scheidt, 956 F.2d at 965.

This action is one requiring the interpretation of terms and provisions of the parties' PSA. Indeed, as described by Rio Algom in the *Initial Pretrial Report* ("IPTR"),

>this matter concerns a *contractual interpretation* dispute regarding whether . . . Rio Algom . . . or . . . Tronox . . . is

>obligated to pay for certain reclamation costs associated with the activities related to various Ambrosia Lake mining facilities located in New Mexico ("Ambrosia Lake Mines") in accordance with (1) a 1988 purchase and sale agreement between [Rio Algom and Tronox], which involved the transfer of the mining company that owned the Ambrosia Lake Mines ("Agreement") and (2) principles of common law indemnification.

[Doc. 29 at 1 (emphasis added)]. Rio Algom further contends that while "*[t]he Agreement* allocates the obligations to pay for reclamation costs . . . [t]he parties are at odds as to which entity is responsible for certain costs related to the reclamation of property both on and off the Ambrosia Lakes Mines." [Id. at 2 (emphasis added)]. Finally, Rio Algom maintains that *the Agreement* obligates Tronox to pay (1) costs associated with a severance package that Rio Algom provides former employees involved in reclamation activities, and (2) pension and post-retirement medical benefits for employees who conducted reclamation activities. [Id. (emphasis added)]. This action, therefore, centers on the interpretation of certain contract terms and provisions.

In light of the nature of this action, the Court does not disagree with Tronox that the Western District of Oklahoma is a convenient forum with respect to witnesses likely to testify as to the making of the PSA. See Cook v. Atchison, Topeka & Santa Fe Ry. Co., 816 F.Supp. 667, 669 (D.Kan. 1993) ("The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)."); Meek & Assocs., Inc. v. First Union Ins. Group, 2001 WL 58839, at *1 (D.Kan. Jan. 18, 2001) ("Convenience of the non-party witnesses is the most important factor to be considered."). Tronox has identified four Oklahoma residents and former Rio Algom employees (Marvin Freeman, Robert Luke, Tim Kamphaus,

5

and Bruce Law)[1] it expects will testify as to such matters as (1) conversations and correspondence bearing on the parties' interpretation of the PSA; (2) financial audits conducted regarding AALR costs; and (3) relevant employee benefits plans. [Doc. 8 at 9-10]. Tronox maintains that trial in the District of New Mexico will deprive it of the availability of compulsory process to compel the attendance of Messrs. Freeman, Luke, Kamphaus, and Law, since they all live more than 100 miles from Albuquerque.[2]  See Fed.R.Civ.P. 45(b)(2) (explaining that Court's subpoena power extends to places outside the district that are within 100 miles of the place of trial).  Notwithstanding these potential witnesses's Oklahoma residency, however, Tronox has not demonstrated that they would be unwilling to come to trial in the District of New Mexico.  Nor has Tronox shown why, as it contends, it would be unfair to have these witnesses, should they be unavailable for trial, testify by deposition.  See Scheidt, 956 F.2d at 966 ("nothing has been submitted . . . to indicate . . . that . . . witnesses [were] unwilling to come to trial in Oklahoma City; that deposition testimony would be unsatisfactory; or that the use of compulsory process [would] be necessary.").

Tronox next submits that the Western District of Oklahoma is the more convenient

---

[1] Tronox also has identified Oklahoma residents Russell Jones, C. David Lessly, Patty Francis, Russell Horner, and William Heimann, employees of former employees of Tronox or its predecessor, as as witnesses who will testify as to, among other things, the parties' interpretations of the PSA.  [Doc. 22 at 5; Doc. 29 at 13].

[2] Tronox represents that Messrs. Freeman and Luke live in Oklahoma City (543 miles from Albuquerque), Mr. Kamphaus in Yukon, OK (528 miles from Albuquerque) and Mr. Law in Edmond, OK (557 miles from Albuquerque).  See http://www.mapquest.com/directions (last visited July 11, 2006).

6

forum because the operative events, *i.e.* the contract negotiations leading to the execution of the PSA, occurred primarily in the Oklahoma City office of Tronox's predecessor. [Doc. 8 at 8]. However, John Bush, former vice president, secretary, and counsel to Rio Algom at the time of the PSA negotiations, has stated through his sworn and signed affidavit that employees located in Toronto negotiated the PSA's terms for Rio Algom. Mr. Bush also has stated that he personally reviewed drafts of the PSA in his Toronto office and communicated with Rio Algom's Board of Directors about the PSA in Toronto. [See generally Doc. 17]. According to Mr. Bush, Rio Algom retained the law firm of Sherman & Howard to assist with the PSA negotiations, which Sherman & Howard attorneys did from their Denver office. [Id. at ¶¶ 10, 11]. Finally, Rio Algom contends that joint reclamation meetings, relevant to establishing the parties' course of performance as to their reclamation-cost allocation obligations, were held at Ambrosia Lake in New Mexico. [Doc. 13 at 6]. In light of the foregoing, the Court is not persuaded that, in terms of the operative events giving rise to the execution of the PSA, the Western District of Oklahoma is a more convenient forum than the District of New Mexico.

Tronox next argues that relevant documents, including correspondence between the parties, evidence of their PSA negotiations, and financial audit information, are located in Oklahoma City, and for that reason this matter should be transferred. The Court does not doubt that Tronox has custody of relevant documents at its Oklahoma City office, just as Rio

Algom most likely also has custody of certain records in New Mexico.[3]  While the accessibility of sources of proof is one of the applicable Chrysler Credit Corp. factors, Tronox must do more than simply assert that relevant documents are located in Oklahoma. Tronox has not, for example, shown that the relevant documents cannot be inexpensively or conveniently transferred or alleged that they are outsized, excessively heavy, or not economically transportable for some other reason.  See Meek & Assocs., Inc., 2001 WL 58839, at *3.

Tronox also cites this district's heavy docket as a factor weighing in favor of transfer. According to the "Federal Court Management Statistics" page maintained on the www.uscourts.gov website, the average time from the filing of a civil suit to disposition is 10.3 months in the District of New Mexico and 8.3 months in the Western District of Oklahoma.  On the other hand, the average time from the filing of a civil suit to trial is 19.4 months in the District of New Mexico but only 15 months in the Western District of Oklahoma.  Also, while there is one more judge (for a total of seven) in the District of New Mexico than in the Western District of Oklahoma, total actions per judgeship in the District of New Mexico equal 669, while total actions per judgeship in the Western District of Oklahoma equal only 338.  See http://www.uscourts.gov/cgi-bin/cmsd2005.pl. (last visited July 12, 2006).  While the congested-docket factor may therefore weigh in favor or transfer, this factor, standing alone, does not outweigh the cumulative effect of the other Chrysler

---

[3] Although Rio Algom maintained an office in Oklahoma City until December 31, 2005, its headquarters are now located in New Mexico.  [Doc. 13 at 10].

Credit Corp. factors that either weigh against transfer or must be deemed neutral.

As a final matter, the Court notes that, while the substance of this litigation involves the interpretation of contract terms and provisions, the outcome of this litigation will likely have a significant affect on workers and landowners in New Mexico, since the dispute involves issues relating to payment of clean-up costs at a site in New Mexico and payment of benefits to workers at that site. For this reason, the District of New Mexico has a real interest in the adjudication of this matter.

### III. CONCLUSION

As the party moving to transfer this case, Tronox bears the burden of establishing that the District of New Mexico is an inconvenient forum. See Chrysler Credit Corp., 928 F.2d at 1515. While the Court does not disagree that the Western District of Oklahoma would also be a convenient forum, the Court concludes that Tronox has not made a sufficiently strong showing that the applicable Chrysler Credit Corp. factors weigh so heavily in its favor that Rio Algom's chosen forum should be disturbed. See Scheidt, 956 F.2d at 965. Accordingly, Tronox's motion to transfer venue will be denied.

**IT IS, THEREFORE, ORDERED** that *Defendant's Opposed Motion to Transfer Venue and Brief in Support* [Doc. 8] is **DENIED**.

**SO ORDERED** this 2nd day of August, 2006, in Albuquerque, New Mexico.

_____
**M. CHRISTINA ARMIJO**
United States District Judge